## Evans v. Johnson Fiscal Court, et al.

(Decided May 23, 1922.)

### Appeal from Johnson Circuit Court.

1. Counties—Indebtedness—Road and Bridge Bonds—Petition—Requisite Number of Voters.—The signing by the requisite number of voters and freeholders of a petition directed to the county court requesting the holding of an election to take the sense of the voters of the county upon the proposition whether road and bridge bonds should be issued need not all be on the same identical paper; it is sufficient if the requisite number sign on different papers, and the different pieces of paper, if identical in their terms, will be treated as one petition.

2. Counties—Indebtedness—Petition—Requisite Number of Voters.— The presumption of law, in the absence of a statutory provision, is that public officials have performed their duties, and if when there is filed with the county court a petition requesting the holding of an election for the purpose of taking the sense of the voters of a county on the question whether road and bridge bonds shall be issued, if the county judge entertains any doubt that the petition is signed by the requisite number of voters and freeholders, it is his duty to institute an inquiry to determine that question, but if no such inquiry is instituted the presumption is that the county judge had knowledge that more than the requisite number of legal voters and freeholders signed the petition.

3. Counties—Elections—Petition.—An allegation in a petition seeking to have such an election declared void that there is nothing on the record showing that either of the persons whose names are signed to the petition is a voter and freeholder of the county except the statement in the petition itself, and that no evidence was heard by the county court to ascertain whether any or all of such petitioners were legal voters and freeholders is insufficient; there being a total failure to allege that any one of the petitioners was not a legal voter and freeholder.

4. Elections—Validity—Petitions.—The validity of such an election does not depend upon whether the records of the county court affirmatively show the election was held in the manner required by law or in accordance with the orders of the county court; there being a failure to allege anything tending to show that the election was invalid in any single respect, the petition was insufficient.

5. Elections—Election Commissioners—Quorum.—Under the provisions of section 1596a-2, Kentucky Statutes, the majority of the board of county election commissioners constitutes a quorum for the transaction of business and such majority may make any order or do any act the board as a whole may make or do.

6. Counties—Elections—Validity of Orders.—The validity or invalidity of orders of the county court, made after the election, distributing the fund to be derived from the sale of the bonds, can in no wise affect the validity of the election or the bonds authorized thereby.

WHEELER & WHEELER for appellant.

W. H. VAUGHAN & SON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

This is an action by appellant, a citizen and taxpayer of Johnson county, against the fiscal court of that county seeking to enjoin it from issuing or selling certain road and bridge bonds which were authorized to be issued at an election held in that county on the 20th day of September, 1919, and seeking to have the election and the order of court directing the issual and sale of the bonds declared void.

To the petition a demurrer was filed and the same was sustained by the trial court, and the plaintiff declining to plead further his petition was dismissed and he has appealed.

The petition was filed with the county court on the 5th of July, 1919, and on the 7th of July, 1919, that court entered an order reciting the filing of the petition containing the requisite number of signatures, and in accordance with its terms ordered an election to be held in that county on the 20th of September, 1919, on the question: "Are you in favor of issuing two hundred thousand dollars in bonds for the purpose of building roads and bridges?" The order further directed the sheriff of the county to make necessary arrangements for opening the polls for the election in the various precincts on that day and to advertise the same and the object for which it was called for at least thirty days before the day of election in the newspaper having the largest circulation in the county and to have printed handbills posted up in not less than four public places in each voting precinct thereof and at the court house door. It likewise directed the clerk to provide the necessary ballots,

supplies, etc., for holding the election and ordered him to cause to be printed on the ballots the question above indicated, and to provide a place thereon in which the voters might indicate whether they were for or against the proposition. And the board of election commissioners of the county were directed in the order to appoint election officers in every voting precinct for the election.

Four reasons are assigned why the election and the order of the fiscal court directing the issue of the bonds were illegal and void:

(1) Because there was no petition filed containing the names of one hundred and fifty voters and freeholders of the county requesting the holding of the election as is required by the statute.

(2) Because there was no record showing the manner of holding the election or that the directions of the court or the law with reference to the advertising and holding thereof were carried out or complied with.

(3) Because the election commissioners did not convass and certify the vote as such commissioners.

(4) Because certain orders of the fiscal court made after the election, directing the distribution of said fund and how the same should be disposed of, were illegal and void.

These questions will be considered in the order given:

1. On this question the allegations of the petition are in substance that on the 5th of July, 1919, four petitions were filed seeking to have the county court call an election for the purpose of taking the sense of the voters on the question, and that each of said petitions was identical in its terms and language but that no one of them contained as many as 150 signatures although the four combined contained 305 signatures, and from this the ultra technical contention is made that the four papers, although identical in terms and seeking the same thing and filed at the same time, were really four separate petitions and should not be treated as one petition because they were on four separate pieces of paper.

A statement of this proposition would seem to furnish its own answer. Three hundred and five voters and freeholders of the county, doubtless residents of many different sections thereof, had by co-operation signed identical papers petitioning the county court for one and the same thing, and to say that it was not one petition because as many as 150 of them had not signed the selfsame paper,

although they had signed papers identical in terms, is so far unreasonable that it calls for no further discussion. The simultaneous action of the several citizens and freeholders in the signing of identical papers asking and demanding of the county court the same remedy, when filed in that court, must be and can be considered as only one petition. Any other holding by the courts would, in many instances and in many communities, make it practically impossible in any reasonable length of time to procure the necessary signatures to such a petition.

It is further alleged in this connection that there is nothing in the record showing that either of the persons whose names are signed to the petition is a freeholder of the county except the statement in the petition itself, and that no proof was heard by the county court to ascertain whether the petitioners or any of them were legal voters and freeholders of the county before ordering the election; but there is no allegation that any one of the 305 who signed the petition was not a legal voter and freeholder of the county, but the only allegation is that there is nothing in the record to show whether as many as 150 of them were.

The presumption of law always is, in the absence of an express statutory provision, that public officials have performed their duty, and if the county court had entertained any doubt that as many as 150 of the petitioners were voters and freeholders, it would have been its duty to institute an inquiry to determine that question, and the fact that no such inquiry was instituted as alleged would seem to be persuasive that the county judge had personal knowledge from his position and his presumed general acquaintance with the people in the county that more than that number were legal voters and freeholders. At any rate there is a total failure in the petition to allege that any one of the 305 petitioners was not a legal voter and freeholder of the county.

2. The allegation of the petition is that there is no record showing the manner of holding the election or that the direction of the court or the law with reference to the advertising and holding of same was carried out or complied with, and that so far as the record shows the election was not advertised as required by the order of court or by the law.

We do not understand the validity of such an election has ever been made to depend upon whether the records of the county court affirmatively show the election was

held in the manner required by law or in accord with the orders of the court. There is no such statutory requirement, nor can any sound reason be given why the county court records should show the details through its orders affirmatively establishing every step necessary to constitute such a lawful election.

The presumption is that all elections are held in the manner prescribed by law until the contrary is alleged and shown, and here we have a total failure of allegation tending to show that this election was invalid in any single respect, but the petititoner contents himself with alleging the record does not show it to be a valid election.

3. The allegation in the petition that the election commissioners of the county did not canvass and certify the vote as such commissioners is shown by the exhibits filed with the petition in the shape of orders of the county court and a certificate of the board of election commissioners, to be untrue. An order of the county court dated the 6th day of October, 1919, recited that the county election commissioners have certified to the result of the vote at the election and filed their certificate with the clerk of the court, and directs the same to be spread upon the records of the court, and it appears the same was done.

While that certificate certifies that all three of the commissioners were present, and gave the result of the vote in the county, it was, in fact, signed by only two of them; but under the provisions of section 1596a-2 of the Kentucky Statutes a majority of the board constitutes a quorum for the transaction of business, or may make any order or do any act the board as a whole is authorized or empowered to do.

4. The allegations of the petition to the effect that after the holding of the election in September, 1919, the fiscal court of Johnson county had made certain alleged unlawful orders with reference to the distribution and disposition of the fund to be derived from the sale of the bonds have no proper place in this record. The object of the action and the relief which was prayed for in the petition was to have the election of September 20, 1919, held to be void, and to enjoin the issual of the bonds authorized thereby. The action is not one to enjoin or prevent the fiscal court from improperly disposing of public funds or to prevent it from disposing of them in an unlawful manner or appropriating them to an unlawful purpose. The validity of such orders as were made after the election by the fiscal court touching the funds to be de-

rived from the bond issue may be called in question here-
after in a proper action, but their validity or invalidity
can in no wise affect the validity of the election or of the
bonds authorized at that election.

Nothing has been stated in the petition in any wise
affecting the validity of the proposed bond issue and the
judgment is therefore affirmed.